LEE (DEAKINS v.). See Case No. 3,697.

## Case No. 8,188.

LEE v. FRANKLIN AVE. GERMAN SAV. INST. et al.

[3 N. B. R. 218 (Quarto, 53);[1] 1 Chi. Leg. News, 370.]

District Court, E. D. Missouri. 1869.

BANKRUPTCY — PREFERENCE — OUT OF THE USUAL COURSE OF BUSINESS—CREDITOR MUST ENFORCE HIS SECURITY—SALE WITHOUT AUTHORITY—HOW CONFIRMED.

1. Although a security given to a creditor by mortgage be out of the usual course of business of the debtor, yet, unless the creditor know of the insolvency of the debtor or have reasonable cause to believe him insolvent, the security will be valid, and may be enforced, although the debtor may have been in fact insolvent at the time the security was given.

2. A creditor of a bankrupt holding security by mortgage or deed of trust cannot enforce his security after the commencement of proceedings in bankruptcy until he first prove his debt and receive permission of the court. If he proceed without authority of court the sale will be invalid, and will be set aside, or upon application for good cause the court may confirm the sale upon terms after the debt is properly proved.

[Cited in Re Brinkman, Case No. 1,884; Phelps v. Sellick, Id. 11,079; Re Hufnagel, Id. 6,-

---

[1] [Reprinted from 3 N. B. R. 218 (Quarto, 53) by permission.]

837; · Re Miller, Id. 9,555; Bradley v. Adams Express Co., 3 Fed. 897.]

The bankrupt, John H. Luehrman, was a member of the firm of Woerheede, Luehrman & Bro., owning one-third interest in a planing-mill and its business. The firm was solvent. In June and July, 1868, the bankrupt indorsed for the firm of Th. Kleinschmidt & Co. two notes, one for two thousand five hundred dollars, maturing September 24, 1868, and the other for three thousand five hundred dollars, falling due October, 1868. In August, Kleinschmidt & Co. failed in business, and the bankrupt became exposed to the payment of these notes, amounting to six thousand dollars. In September, the bankrupt applied to the savings institution to make arrangements to answer to his liability as indorser for K. & Co., and proposed to the defendant, either to sell or to give a deed of trust upon his interest in the mill and its machinery and fixtures to secure his liability. At the time of making these propositions the bankrupt stated that he owed no other debts than those due defendant, and that he had a right, upon giving three months' notice, to dissolve the partnership; that he was tired of the business, and desired to go into some business that he understood better; that he had put into the firm about six thousand dollars, and considered his interest in the mill to be worth that sum. At the same time he was also the maker of a note with his brother Charles Luehrman, held by defendant, for one thousand three hundred dollars, and was second indorser upon a note of K. & Co. for five thousand dollars, the first indorser being abundantly solvent, this fact being known to defendant. The defendant, after making inquiry as to the value of the bankrupt's interest in the mill, agreed to take the deed of trust, and on the 23d of September, before the maturity of the first note, the bankrupt executed his note for six thousand one hundred and twenty-six dollars and fifty cents, maturing December 31, 1868, and securing the same by a deed of trust upon his one-third interest in the mill, machinery, and fixtures, at the same time notifying his partner that the firm would be dissolved in accordance with the articles, on the 31st of December, 1868. The notes of K. & Co. were then handed to the bankrupt, who left them with the defendant, and on the 30th of September the defendant bought the notes of K. & Co. from the bankrupt for three hundred dollars, applying the money to the credit of the notes of Luehrman & Bro., the bankrupt saying that he had to pay only three hundred dollars, and that his brother was liable to pay the balance of one thousand dollars. The liability to pay the indorsements of the note of Kleinschmidt & Co., with what he lost by their failure, made J. H. L. insolvent in fact, although he represented that he could pay all his debts when he settled with the bank. On the 31st

of December, 1868, J. H. L. filed his petition in bankruptcy. On January 5, 1869, the note of six thousand one hundred and twenty-six dollars and fifty cents not being paid, the trustee advertised the property for sale on January 28, and on that day the bank bought in the property for four thousand one hundred dollars. The assignee in bankruptcy [John R. Lee] filed his bill to set aside the sale made by the trustee, as having been made after an act of bankruptcy without authority of court; and also to set aside the deed of trust as having been made with a view to give a preference, the defendant having at the time reasonable cause to believe the bankrupt insolvent, the conveyance being out of the usual course of business. The evidence showed that the deed · of trust was made and executed as a security by the bankrupt before his liability as indorser of K. & Co. was fixed, but that the bankrupt stated that he owed no other debts than those due defendant, and that when he became indorser for K. & Co., inquiry was made as to his means, and he was considered as being worth from twelve to fourteen thousand dollars. Meyer, a son-in-law of the bankrupt, and a member of the firm of K. & Co., owed the bankrupt four thousand dollars for money borrowed, which was lost by the failure of K. & Co. The firm of Woerheede, Luehrman & Bro. was solvent, but J. H. L. was indebted to Woerheede, for about one thousand one hundred dollars, part of the original purchase of his share of the property of the firm, and was, in fact, rendered insolvent by the failure of K. & Co., and his liability to pay his accommodation indorsements in their favor. The deed of trust did, in fact, give a preference to the defendant over the other creditors.

Mr. Whittlesey, for assignee.
M. L. Gray, for defendants.


THE COURT held that, although the deed of trust executed by the bankrupt did in fact give a preference to the savings institution, yet, that its officers did not at the time know that the bankrupt was insolvent, and did not have reasonable cause to believe him to be insolvent, or to be acting in contemplation of bankruptcy or insolvency, and that the security was valid.

THE COURT further held, as the defendant had enforced its security by a sale under the deed of trust after the filing of the petition in bankruptcy, without proving its debt as secured creditor, the sale was invalid; but as the property had sold for a fair price, and for as large a sum as it would probably bring upon a resale, that upon application of the saving institution, due proof of the debt being made before the register, the sale would be confirmed upon payment of the costs of the suit. The defendant, upon a subsequent day, made proof of its debt, and applied for a confirmation of the sale,

which was granted by the court upon payment of the costs of the suit, and the defendant was allowed to stand as a general creditor for the unpaid balance.